UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WILLIAM E. WADSWORTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:07-cv-0832-DFH-TAB |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON JUDICIAL REVIEW

This is an action for judicial review of the decision of the Commissioner of Social Security to deny plaintiff William Wadsworth's application for disability insurance benefits and supplemental security income.  An Administrative Law Judge (ALJ) denied Mr. Wadsworth's claim after finding that he suffered from severe impairments but was capable of performing his past work as a linen distributor and/or other work.  As explained in detail below, the ALJ's decision must be vacated and remanded.  The ALJ failed to seek the opinion of a medical expert as to whether Mr. Wadsworth's impairments equaled a listed impairment that would justify a finding of disability.  The ALJ also erred in assessing Mr. Wadsworth's credibility by failing to consider Mr. Wadsworth's explanation for not seeking medical treatment on a more regular basis.

*Background*

William Wadsworth was born in 1954.  He has a history of pain in his right shoulder, alcoholism, and depression.  He also has cerebral palsy.  He had several surgeries on his legs due to his cerebral palsy during his childhood.  R. 210.

On July 26, 2005, Mr. Wadsworth saw Dr. Cooper because of pain and swelling in his right ankle.  Dr. Cooper noted decreased range of motion and minimal swelling in Mr. Wadsworth's right ankle.  R. 156.  On August 16, 2005, Mr. Wadsworth saw Dr. Angelicchio because of pain in his right ankle.  Dr. Angelicchio found that Mr. Wadsworth had painful range of motion in his right ankle and loss of full motion in the extremes.  He prescribed Feldene, an anti-inflammatory medication, to treat Mr. Wadsworth's symptoms.  R. 168.  On October 18, 2005, Mr. Wadsworth returned to Dr. Angelicchio's office and reported that the condition of his right ankle had improved on Feldene.  R. 166.  Dr. Angelicchio assessed Mr. Wadsworth as having degenerative joint disease in his right ankle, but stated that he had good range of motion and good strength in his right ankle.  He stated that Mr. Wadsworth was experiencing minimal pain and mild swelling.  *Id.*  On January 20, 2006, Dr. Angelicchio stated once again that Mr. Wadsworth's right ankle symptoms had improved and that he had only mild pain.  Dr. Angelicchio found that Mr. Wadsworth had good range of motion and good strength in his right ankle.  R. 165.

On March 13, 2006, Dr. Djodjeva, the consultative examiner, examined Mr. Wadsworth.  Dr. Djodjeva found that Mr. Wadsworth had a spastic gait and limped on his right leg due to his cerebral palsy.  R. 175.  She found that the muscles in both of Mr. Wadsworth's legs were spastic and that he was unable to squat.  R. 176.  Mr. Wadsworth had complained to her of pain in both of his wrists and hands, and claimed that he was unable to hold even a cup of coffee.  R. 175.  Dr. Djodjeva found that Mr. Wadsworth had normal range of motion and strength, good stability, and no joint enlargement or tenderness in either of his upper extremities.  R. 176.  Dr. Djodjeva completed a residual functional capacity assessment form stating that Mr. Wadsworth had the capacity to lift twenty pounds occasionally, lift ten pounds frequently, stand and walk about six hours in an eight hour workday, sit for about six hours in a workday, and was limited in his ability to push or pull with his lower extremities.  R. 179.  Dr. Djodjeva opined that Mr. Wadsworth could climb, balance, stoop, kneel, crouch, and crawl occasionally.  R. 180.

Dr. Summers examined Mr. Wadsworth on June 8, 2006.  Dr. Summers noted that Mr. Wadsworth limped due to cerebral palsy.  R. 191.  He found normal range of motion and strength, and no joint enlargement or tenderness in either of Mr. Wadsworth's upper extremities.  *Id.*

On June 21, 2006, Dr. Theodore Nukes, a neurologist, examined Mr. Wadsworth.  He found no weakness in Mr. Wadsworth's upper extremities but a

lot of spasticity in the lower extremities and a spastic gait. R. 209. Dr. Nukes stated: "I gave the patient a choice of being placed on medicine for spasticity, physical therapy and a sleep study to evaluate for obstructive sleep apnea, but he tells me he is not here for therapy but more for Disability evaluation." *Id.*

On June 22, 2006, Mr. Wadsworth visited the office of Dr. Steven Neucks, a rheumatologist. R. 210. Dr. Neucks found that Mr. Wadsworth walked with a typical cerebral palsy gait and experienced pain when he rotated his right ankle. Mr. Wadsworth's ankle joints showed swelling in the left ankle and mild discomfort with range of motion. The right ankle showed signs of significant degenerative change. R. 211. Mr. Wadsworth complained of pain in both wrists, but Dr. Neucks found no swelling and the exam of his wrists was within normal limits. R. 210-11. Dr. Neucks stated: "This patient has significant degenerative arthritis of his right ankle. Given the gait problems experienced due to cerebral palsy, this is causing a substantial disability in his walking. He is currently not interested in having ankle surgery, particularly due to cost." R. 212.

Mr. Wadsworth applied for disability insurance benefits and supplemental security income effective December 15, 2005. The Social Security Administration denied his applications initially and on reconsideration. On March 5, 2007, ALJ Stephen Davis held a hearing.

*Testimony at the Hearing*

-4-

Mr. Wadsworth was 53 years old at the time of the ALJ's decision.   Mr. Wadsworth had a high school education and past relevant work experience as a transport operator and linen distributor.   R. 237, 239.   He was fired from his job as a transport operator after losing his commercial driver's licence due to a conviction for driving while intoxicated.   R. 238.   He left his job as a linen distributor after losing his regular driver's license, which made it impossible for him to get to that workplace.   R. 240.   He has since received counseling for his drinking problem and has been sober for over three years.   R. 249.

Mr. Wadsworth has worked since August 2006 as a part-time janitor at a doctor's office.   R. 241.   He earns less than the amount that would indicate substantial gainful activity from this job.   R. 242.   His job duties include emptying the trash, sweeping, mopping, cleaning windows, and dusting.   He testified at the hearing that this job required two hours per day of walking.   R. 243.   He stated that it was difficult for him to walk due to constant pain in his ankles from his arthritis, and that he experienced pain in his wrists from lifting and pulling trash bags.   R. 244.   He claimed he could stand for only fifteen minutes before needing to rest and that he could walk only half a block at a time.   R. 245.   He stated that he did not typically use a cane or crutch when walking, but used one every few months if his ankle hurt a lot.   *Id.*   He estimated that he fell down approximately twice per week because of his difficulty walking.   He usually worked by himself at

night, so his supervisors did not know that he fell.  R. 250.  He testified that he held onto a grocery cart when shopping to prevent himself from falling.  R. 251.

Mr. Wadsworth testified that in addition to his ankle pain, he had significant pain in both of his wrists and his back.  He stated that lifting objects caused him great pain.  Pulling a fifty-five gallon trash bag strained his wrists and caused him severe pain.  R. 247.  He testified that his hands tingled and he had a weak grip, which made it difficult for him to pick up even light objects.  R. 248. He testified that his back twisted when he walked because of his cerebral palsy. R. 246.

### Procedural History

The ALJ concluded that Mr. Wadsworth was not disabled for the purpose of the Social Security Act and issued his decision denying disability insurance benefits and supplemental security income on April 23, 2007.  R. 11-20.  The Appeals Council denied Mr. Wadsworth's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  See *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994).  Mr. Wadsworth now seeks review by this court of the denial of his application.  The court has jurisdiction in the matter under 42 U.S.C. §§ 405(g) and 1383(c)(3).

*Disability Standards and Judicial Review*

To be eligible for disability insurance benefits or supplemental security income, a claimant must establish that he suffers from a disability within the meaning of the Social Security Act.  The claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that could be expected to result in death or that has lasted or could be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Mr. Wadsworth was disabled only if his impairments were of such severity that he could not engage in any kind of substantial work existing in the national economy, regardless of whether such work was actually available to him.  *Id.* at §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the ALJ must apply the following five-step inquiry:

(1)     Has the claimant engaged in substantial gainful activity?  If so, he is not disabled.

(2)     If not, did the claimant have an impairment or combination of impairments that were severe?  If not, he is not disabled.

(3)     If so, did the impairment(s) meet or equal a listed impairment in the appendix to the regulations?  If so, he is disabled.

(4)     If not, could the claimant do his past relevant work?  If so, he is not disabled.

(5)     If not, could the claimant perform other work given his residual functional capacity, age, education, and experience?  If so, then he is not disabled.  If not, he is disabled.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); see generally 20 C.F.R. §§ 404.1520, 416.920.  When applying this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Applying the five-step process, the ALJ determined at step one that Mr. Wadsworth had not performed substantial gainful activity since the alleged onset of his disability.  At step two, he determined that Mr. Wadsworth had severe impairments that limited his ability to perform basic work activities based on his cerebral palsy and degenerative joint disease in his right ankle.  At step three, the ALJ concluded that Mr. Wadsworth did not meet the requirements of either Listing 11.07 or 1.02A.  At step four, the ALJ found that Mr. Wadsworth was capable of performing his past relevant work as a linen distributor.  At step five, the ALJ concluded that Mr. Wadsworth had the residual functional capacity to perform light exertional work with only occasional postural activities.  Using the Medical-Vocational Guidelines ("the Grids"), the ALJ determined that Mr. Wadsworth could perform a significant number of jobs in the national economy.  The ALJ concluded that Mr. Wadsworth was not disabled at any time through the date of the decision and was therefore not entitled to disability insurance benefits or supplemental security income.

*Standard of Review*

"The standard of review in disability cases limits . . . the district court to determining whether the final decision of the [Commissioner] is both supported by substantial evidence and based on the proper legal criteria." *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005), quoting *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). To determine whether substantial evidence exists, the court must "'conduct a critical review of the evidence,' considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision . . . ." *Briscoe*, 425 F.3d at 351, quoting *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); see also *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The court must not attempt to substitute its judgment for the ALJ's judgment by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000); *Luna*, 22 F.3d at 689. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), or based his decision on serious factual mistakes or omissions, *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).   This determination by the court requires that the ALJ's decision adequately discuss the relevant issues:   "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review."   *Briscoe*, 425 F.3d at 351, citing *Herron v. Shalala*,19 F.3d 329, 333-34 (7th Cir. 1994). Although the ALJ need not provide a complete written evaluation of every piece of testimony and evidence, *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005), a remand may be required if the ALJ has failed to "build an accurate and logical bridge from the evidence to her conclusion." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002), quoting *Dixon*, 270 F.3d at 1176.

*Discussion*

Mr. Wadsworth argues that the ALJ erred in his analysis of steps three, four, and five of the five step inquiry.  At step three, Mr. Wadsworth argues that the ALJ erred in concluding that his impairments did not meet Listing 11.07 or 1.02A.  He also argues that the ALJ erred by not summoning a medical advisor to testify regarding whether his impairments equaled a listing.  Mr. Wadsworth argues that the ALJ also erred in determining that his allegations about the severity of his symptoms were only partially credible.  At step four, Mr. Wadsworth

argues that the ALJ's analysis was incomplete.   Finally, at step five, Mr. Wadsworth argues that the ALJ erred by relying solely on the Medical-Vocational Guidelines to determine if he was capable of performing work given his residual functional capacity, age, education, and experience because he had both exertional and non-exertional limitations.

I.      *Step Three – Whether Impairments Met or Equaled a Listing*

A.      *Listing 11.07*

To meet the requirements of Listing 11.07 (cerebral palsy), a claimant must provide evidence that he has cerebral palsy and either an IQ of 70 or less, abnormal behavior patterns, significant interference in communication due to a speech, hearing or visual defect, or disorganization of motor function.  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 11.07.  Disorganization of motor function is defined as "Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 11.04B.  The ALJ found that there was no evidence that Mr. Wadsworth had an IQ of 70 or less, exhibited abnormal behavior patterns, or had significant communication problems.  The ALJ then stated:  "Although his cerebral palsy affects his lower extremities, there is no disorganization of motor function that results in sustained disturbance of gross and dexterous movement, or gait and station."  R. 15.

Mr. Wadsworth has presented evidence of a severe impairment in his right ankle that disturbs his motor skills and his gait.   On August 16, 2005, Dr. Angelicchio stated:   "Examination of the right ankle reveals painful range of motion and loss of full motion in the extremes."   R. 168.   Dr. Djodjeva noted on March 13, 2006 that Mr. Wadsworth had an impaired gait and impaired motor skills in his lower extremities.   R. 175.   Dr. Theodore Nukes found that he had  "a lot of spasticity" in his lower extremities.   R. 209.   Dr. Steven Neucks stated that Mr. Wadsworth had a pigeon-toed gait and that he rotated on his right ankle when he walked.    R. 211.    He also stated that Mr. Wadsworth had significant degenerative change in his right ankle, which caused "a substantial disability in his walking."   R. 212.   Thus, the ALJ erred in stating that Mr. Wadsworth had not provided evidence of disorganization of his motor functions resulting in disturbance of his gait.

This error was harmless.   Mr. Wadsworth could meet Listing 11.07 only by showing evidence of significant and persistent disorganization of motor function in two extremities.    In addition to his impairment in his right ankle, Mr. Wadsworth has presented evidence that he experienced pain in his right shoulder in 2002 and that he had pain in both wrists.   R. 170, 171, 176.   However, there is no medical evidence that Mr. Wadsworth's motor function in his upper extremities is impaired.    Dr. Djodjeva, the consulting examiner, noted on March 13, 2006 that Mr. Wadsworth complained of bilateral wrist pain, but found

normal range of motion and strength, good stability, and no joint enlargement in his upper extremities.  R. 176.  Similarly, Dr. Summers found normal range of motion and strength, and no joint enlargement or tenderness in Mr. Wadsworth's upper extremities on June 8, 2006.  R. 191.  Dr. Theodore Nukes noted no weakness in his upper extremities.  R. 209.  Dr. Steven Neucks stated that Mr. Wadsworth reported pain in both wrists but had no swelling.  He found no problems with Mr. Wadsworth's wrists or shoulders.  R. 210-11.  Due to the lack of medical evidence of loss of function in a second extremity, there is substantial evidence to support the ALJ's conclusion that Mr. Wadsworth's impairments did not meet Listing 11.07.

B.   *Listing 1.02A*

Listing 1.02 states that a major dysfunction of a joint can constitute a disability.[1]   The dysfunction must be characterized by a gross anatomical deformity, chronic joint pain with signs of limited motion or other abnormal motion of the joint, and findings of joint space narrowing, bony destruction, or general stiffness.   20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.02.  Listing 1.02(A) requires that the dysfunction in the joint involve a major peripheral weight-bearing joint, such as the hip, knee, or ankle, and result in "inability to ambulate effectively."  The introductory comments to the listings regarding musculoskeletal system impairments provide guidance for defining an inability to ambulate effectively:

> Inability to ambulate effectively means an extreme limitation of the ability to walk, i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

---

[1]The general comments in Listing 1.00 state: "Impairments with neurological causes are to be evaluated under 11.00ff."  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.00(B)(1).  Neither party argued that this comment means that an individual with cerebral palsy could not meet the requirements of a musculoskeletal system listing.  It is not clear that such an argument would be persuasive given the facts of this case.

-14-

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b)(1).  The listings include several examples of ineffective ambulation:  the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use public transportation, the inability to perform routine activities that require walking, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a hand rail.  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b)(2).  Pain may be a factor that contributes to an inability to ambulate effectively.  See 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(d).

The ALJ evaluated Mr. Wadsworth's right ankle impairment under Listing 1.02A and found that he failed to establish an inability to ambulate effectively. R. 15.  Elsewhere in his opinion, the ALJ noted that Mr. Wadsworth alleged that his mobility was limited and that he became fatigued after walking for a short time.  He also noted that Mr. Wadsworth alleged that he fell frequently.  R. 16. The ALJ found that Mr. Wadsworth had presented evidence of degenerative joint disease in his right ankle, but he did not find Mr. Wadsworth's claims about his symptoms and limitations entirely credible.  R. 16 ("his course of treatment does not support his allegations of debilitating pain and associated inability to stand and walk for long periods of time").

As the ALJ noted, Mr. Wadsworth's indicated at the hearing that he was able to walk only half a block without stopping, fell frequently, and experienced

pain when he walked.  Dr. Steven Neucks was the only doctor who expressed any concern about Mr. Wadsworth's ability to walk.   R. 212 ("This patient has significant degenerative arthritis of his right ankle.   Given the gait problems experienced due to cerebral palsy, this is causing a substantial disability in his walking.").   Other evidence in the record indicates that Mr. Wadsworth was able to walk effectively.   Mr. Wadsworth stated that he typically did not use a cane or crutch when he walked, R. 245, which indicates that he was able to walk well enough to perform his duties as a maintenance worker without assistance.   Mr. Wadsworth complained of pain in his right ankle in July 2005, but he reported significant improvement by January 20, 2006.  R. 165.  On August 1, 2006, Dr. Summers noted that Mr. Wadsworth denied any joint pain, joint swelling, and muscle weakness.  R. 202.  Dr. Summers noted that Mr. Wadsworth's gait and station were normal.  *Id.*  Dr. Theodore Nukes discussed with Mr. Wadsworth the possibility of placing him on medicine for the spasticity in his lower extremities or beginning a course of physical therapy, R. 209, but, as the ALJ stated, there is no evidence in the record that Mr. Wadsworth took advantage of either of these options.  R. 16.  Thus, the ALJ's conclusion that Mr. Wadsworth did not meet the requirements of Listing 1.02A because he had not provided evidence that he was unable to ambulate effectively was supported by substantial evidence.

C.    *No Testimony from Medical Advisor*

Mr. Wadsworth argues that the ALJ erred when he failed to summon a medical advisor to testify regarding whether his impairments equaled a listed impairment.  The regulations discussing medical equivalence require the ALJ to consider the opinion of one or more medical or psychological consultants designated by the Commissioner when determining whether an impairment medically equals a listing.  20 C.F.R. §§ 404.1526(c), 416.926(c).  Social Security Ruling 96-6p states:

> The administrative law judge or Appeals Council is responsible for deciding the ultimate legal question whether a listing is met or equaled.  As trier of the facts, an administrative law judge or the Appeals Council is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments.  However, longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.

61 Fed. Reg. 34466, 34468 (July 2, 1996).  The ALJ need not summon a medical expert to testify at the hearing if a medical expert has signed a disability determination form that addresses whether the alleged impairment equals a listing, for example an SSA-831-U5 form.  *Id.*; *Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir. 1989).

Here, no medical advisor designated by the Commissioner has expressed an opinion as to whether Mr. Wadsworth's impairments equaled a listing.  Dr.

-17-

Djodjeva completed only a residual functional capacity assessment form, SSA-4734-BK.  R. 178-85.  This form does not provide space for the medical advisor to comment on whether the claimant's impairments equal a listing; it deals only with the claimant's residual functional capacity.  The ALJ erred in not seeking the opinion of a medical advisor as to whether Mr. Wadsworth's impairments equaled a listing.  Thus, the court must vacate the ALJ's decision and remand this case for further consideration on this basis.

II.     *Credibility Determination*

To determine Mr. Wadsworth's residual functional capacity, including whether he could return to his past relevant work, the ALJ found it necessary to evaluate Mr. Wadsworth's credibility.  The ALJ found that Mr. Wadsworth was credible to the extent that the record supported his allegations that his symptoms limited his functional capacity to some degree, but not to the degree that Mr. Wadsworth alleged.  Mr. Wadsworth argues that the ALJ erred in finding him only partially credible.

The ALJ is not "required to give full credit to every statement of pain, and require a finding of disabled every time a claimant states that she feels unable to work."  *Pope v. Shalala*, 998 F.2d 473, 486 (7th Cir. 1993), overruled on other grounds by *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999).  However, the ALJ is

required to consider statements of the claimant's symptoms and how they affect his daily life and ability to work. 20 C.F.R. §§ 404.1529(a), 416.929(a). There is a two-part test for determining whether complaints of pain contribute to a finding of disability. First, the claimant must provide objective medical evidence of an impairment or combination of impairments that could be expected to produce the symptoms the claimant alleges. §§ 404.1529(a-b), 416.929(a-b). Second, the ALJ must consider the intensity and persistence of the alleged symptoms. The ALJ considers these factors in light of medical evidence and any other evidence of: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain. §§ 404.1529(c)(3), 416.929(c)(3). After considering whether the evidence shows that the claimant acts on a day to day basis as a person who is really suffering from the symptoms the claimant has alleged would act, the ALJ makes a credibility determination. §§ 404.1529(c)(4), 416.929(c)(4).

The ALJ is in the best position to observe the demeanor of a witness, so the court ordinarily will not upset an ALJ's credibility determination as long as it is supported by the record and is not "patently wrong." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994). Reviewing courts are in a better position to review an

ALJ's credibility determination when it rests on objective factors or fundamental implausibilities rather than subjective considerations.  *Id.*

In discussing Mr. Wadsworth's credibility, the ALJ began by considering whether Mr. Wadsworth's contentions were consistent with the medical records he submitted.  The ALJ found that Mr. Wadsworth's allegations of back pain were not supported by the medical records.  Neither his treatment records nor his neurological examination revealed signs of back pain.  R. 17.  The ALJ also found that the treatment records did not support contentions that Mr. Wadsworth's problems had worsened after December 15, 2005, but showed rather that Mr. Wadsworth's problems with his right ankle had improved by October 2005.  The ALJ then noted that Mr. Wadsworth had informed Dr. Summers on June 8, 2006 that the only reason for his appointment was because he was filing for disability benefits.  R. 189.  Mr. Wadsworth also told Dr. Theodore Nukes on June 21, 2006 that he had come to his office for a disability evaluation, not for therapy.  R. 209.  The ALJ concluded:  "the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual."  R. 17.

Mr. Wadsworth argues that the ALJ failed to consider the fact that the reason he did not seek more regular medical treatment was that he could not afford such treatment.  Social Security Ruling 96-7p states:  "the adjudicator must not draw any inferences about an individual's symptoms and their functional

-20-

effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."  61 Fed. Reg. 34483, 34487 (July 2, 1996).

Two records indicate that Mr. Wadsworth may not have sought treatment because of financial difficulties.  Dr. Steven Neucks stated on June 22, 2006 that Mr. Wadsworth was "not interested in having ankle surgery, particularly due to cost."  R. 212.  The ALJ did not comment on this statement when discussing Mr. Wadsworth's credibility.  Mr. Wadsworth also stated in a form he submitted to the ALJ at the hearing:  "I have difficulty seeing the doctor because I have no insurance."  R. 152.  The ALJ's failure to consider Mr. Wadsworth's explanation for his sparse medical history was not in keeping with Ruling 96-7p.

Social Security Ruling 96-7p provides:  "An individuals' statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."  61 Fed. Reg. 34483, 34484 (July 2, 1996).  In keeping with this Ruling and the regulations discussing the process for reaching a credibility determination, the ALJ considered a variety of factors in addition to the objective medical evidence when determining whether Mr. Wadsworth was credible.     See 20 C.F.R. §§ 404.1529(c)(3),

416.929(c)(3).  The ALJ noted that Mr. Wadsworth denied experiencing side effects from the medications he took for arthritis and reflux disease.  R. 17.  The ALJ also found that Mr. Wadsworth had not presented any evidence regarding treatment and other measures that he took to relieve his pain.  The ALJ stated that the claimant described daily activities that were inconsistent with his complaints of disabling symptoms, specifically that Mr. Wadsworth had continued to work after the alleged onset of his disability.  *Id*.  Though he had stopped working at two previous jobs, he had left those jobs because of his loss of his driver's license, not because of his alleged disability.  R. 18.

The ALJ provided a detailed series of reasons for his finding that Mr. Wadsworth was only partially credible.  However, the ALJ's failure to consider Mr. Wadsworth's explanation for not seeking medical treatment on a more regular basis constituted an error.  Had the ALJ taken Mr. Wadsworth's explanation into account, he might have found his testimony credible.  The ALJ's credibility determination affected the conclusions that he reached regarding whether Mr. Wadsworth's impairments met or equaled a listing, whether he could perform his past relevant work, and whether he could perform any other work.  Thus, the ALJ's error was not harmless.

III.   *Step Four – Past Relevant Work*

Social Security Ruling 82-62 provides:  "The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision.  Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit."  SSR 82-62:  Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, In General, *available at* http://www.socialsecurity.gov/OP_Home/rulings/di/02/ SSR82-62-di-02.html.  The Ruling states that determination of the claimant's ability to perform past relevant work requires careful consideration of the claimant's testimony about which requirements of the work he or she can no longer meet, medical evidence establishing the effect of the impairments on the claimant's ability to work, and, in some cases, supplementary information about how the work is generally performed in the economy.  *Id.*  To find that the claimant has the capacity to perform a past relevant job, the ALJ must make:  (1) a finding of fact as to the claimant's residual functional capacity; (2) a finding of fact as to the physical and mental demands of the past job; and (3) a finding of fact that the claimant's residual functional capacity would enable him or her to perform the past job.  *Id.*

Here, the ALJ stated that Mr. Wadsworth had the capacity to perform his past work as a linen distributor.  The ALJ found that Mr. Wadsworth had the

-23-

residual functional capacity to perform light exertional work with only occasional balancing, stooping, kneeling, crouching, crawling, and climbing.  The ALJ found that the information Mr. Wadsworth provided about his job as a linen distributor indicated that it required him to push and to do a lot of walking.  The ALJ stated: "Other information provided by the claimant indicates that this job does not require the performance of work-related activities precluded by the residual functional capacity limitations reported above."  R. 18.  The three sentences the ALJ devoted to discussion of whether Mr. Wadsworth could perform his past work as a linen distributor do not meet the requirements outlined in Ruling 82-62.  It is not clear from these brief sentences that the ALJ considered carefully Mr. Wadsworth's testimony or the medical evidence about how his impairments would affect his ability to work as a linen distributor, or whether the ALJ consulted any supplemental sources regarding how the job of linen distributor is generally performed.

After concluding that Mr. Wadsworth had the capacity to perform work as a linen distributor, the ALJ stated:  "Hypothetically, even if the claimant were not capable of performing his past relevant work as a linen distributor, the next step in the analysis also supports a conclusion of not disabled."  R. 18.  The ALJ proceeded to perform an analysis of whether Mr. Wadsworth could perform other work given his residual functional capacity, age, education, and experience.  Thus, even though the ALJ's analysis in step four was flawed, the error would be

harmless if the ALJ's conclusions under step five were supported by substantial evidence.

IV.    *Step Five – Reliance on the Grids*

The Medical-Vocational Guidelines (the "Grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, indicate in grid form whether a significant number of jobs exist in the national economy for individuals with various impairments who have attained different ages, education, and work experience. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).  The Grids can be applied when the claimant's residual functional capacity corresponds with the criteria of a specific rule. *Heckler v. Campbell*, 461 U.S. 458, 462 & n.5 (1983).  There are two broad types of limitations that may affect a claimant's ability to work:  exertional and non-exertional.  Limitations that affect only an individual's ability to meet the strength demands of jobs, such as sitting, standing, walking, and lifting, are exertional limitations.  20 C.F.R. §§ 404.1569a(b), 416.969a(b).  All other limitations are non-exertional limitations, including difficulty concentrating, understanding and following directions, and performing postural functions of work such as reaching, stooping, climbing, or crouching.  20 C.F.R. §§ 404.1569a(c), 416.969a(c). Ordinarily, if the claimant has exertional and non-exertional limitations, an ALJ cannot rely solely on the Grids to determine whether the claimant is able to perform a significant number of jobs in the economy.  20 C.F.R. §§ 404.1569a(d),

416.969a(d); *Haynes v. Barnhart*, 416 F.3d 621, 628-29 (7th Cir. 2005); *Warmoth v. Bowen*, 798 F.2d 1109, 1110 (7th Cir. 1986).   Introducing non-exertional limitations complicates the analysis beyond the straightforward rules the Grids encapsulate.

Mr. Wadsworth's right ankle impairment and the pain that he experienced due to the impairment are exertional limitations that affected his ability to stand and walk.  Though Mr. Wadsworth claimed to feel pain in his wrists, which could conceivably create non-exertional limitations on his ability to reach and handle objects, the ALJ found that there was no medical evidence of an impairment in his wrists.  R. 14.  The ALJ found that Mr. Wadsworth had non-exertional limitations when he found that Mr. Wadsworth could perform light exertional work with "only occasional postural activities such as balancing, stooping, kneeling, crouching, crawling, and climbing of ramps, stairs, ladders, ropes, and scaffolds."  R. 15.  Thus, Mr. Wadsworth has exertional and non-exertional limitations.  If the general rule were applicable, the ALJ should not have relied solely on the Grids in making his step five determination.

In *Nelson v. Secretary of Health and Human Services*, the Seventh Circuit stated:  "The fact that a claimant suffers from a nonexertional impairment does not, however, immediately preclude utilization of the grid.  '[B]efore reaching the conclusion that the grid will not be applied because [the] claimant alleges

nonexertional limitations, those nonexertional limitations must be severe enough to restrict a full range of gainful employment at the designated level.'"  770 F.2d 682, 685 (7th Cir. 1985), quoting *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 537 (6th Cir. 1981). The court concluded in *Nelson* that the ALJ's use of the Grids was proper because he had found that the claimant could perform a variety of work-related functions despite any non-exertional pain she might feel in the process.  In *Fox v. Heckler*, 776 F.2d 738, 742-43 (7th Cir. 1985), the ALJ found that a claimant was capable of nearly the full range of light work, provided that he was not required to do any significant bending or stooping and had adequate rest periods after standing for a long period, and the ALJ made his step five determination using only the Grids.  The Seventh Circuit held that despite these postural limitations, the claimant could perform the majority of light jobs and that the ALJ's reliance on the Grids was not an error.  In *DeFrancesco v. Bowen*, the Seventh Circuit recognized that there are circumstances in which an ALJ's reliance on the Grids can be justified because a claimant can perform the majority of jobs in an occupational base despite some non-exertional restrictions. 867 F.2d 1040, 1045 (7th Cir. 1989), citing *Fox*, 776 F.2d at 743.

To explain why he relied solely on the Grids in this case, the ALJ stated only:  "The various postural restrictions to only occasional do not erode the occupational base for a full range of light exertional work."  R. 19.  The ALJ found that Mr. Wadsworth was 51 years old, which is defined as closely approaching

advanced age.  20 C.F.R. §§ 404.1563(d), 416.963(d).  Mr. Wadsworth has a high

school education and is able to communicate in English.  The ALJ found it

unnecessary to determine whether Mr. Wadsworth had transferrable job skills.

Based on these factors, the ALJ relied on Rule 202.14 of the Grids to find that Mr.

Wadsworth was not disabled.  R. 19.

>    Social Security Ruling 83-14 states:
>
>    The major difference between sedentary and light work is that most light jobs – particularly those at the unskilled level of complexity – require a person to be standing or walking most of the workday.  Another important difference is that the frequent lifting or carrying of objects weighing up to 10 pounds (which is required for the full range of light work) implies that the worker is able to do occasional bending of the stooping type, i.e., for no more than one-third of the workday to bend the body downward and forward by bending the spine at the waist.

SSR 83-14: Titles II and XVI:  Capability to Do Other Work – the Medical-

Vocational Rules as a Framework for Evaluating a Combination of Exertional and

Nonexertional Impairments, *available at* http://www.socialsecurity.gov/OP_Home

/rulings/di/02/SSR83-14-di-02.html.  Ruling 83-14 also states that there are

non-exertional limitations that have very little or no effect on the unskilled light

occupational base.  It provides examples such as:  inability to ascend or descend

scaffolding, poles, and ropes; inability to crawl on hands and knees; and inability

to use the finger tips to sense the temperature or texture of an object.  *Id.*  Social

Security Ruling 85-15 provides:  "Where a person has some limitation in climbing

and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work." SSR 85-15: Titles II and XVI: Capability to Do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, *available at* http://www.socialsecurity.gov/OP_Home/rulings/di/02/SSR85-15-di-02.html. Ruling 85-15 also states that if a person can stoop occasionally to lift objects, the sedentary and light occupational base is virtually intact. *Id.* Based on these Rulings, Mr. Wadsworth's ability to balance, stoop, kneel, crouch, crawl, and climb only occasionally did not prevent him from performing the majority of light work. Though the ALJ should have explained his reasons for relying on the Grids in greater detail, the ALJ's reliance on the Grids was not an error.

### Conclusion

The ALJ's determination that Mr. Wadsworth's impairments did not meet the requirements of Listing 11.07 or 1.02A is supported by substantial evidence. The ALJ did not err by relying solely on the Grids to determine if Mr. Wadsworth could  perform the requirements of a significant number of jobs in the economy. However, the ALJ erred in not summoning a medical advisor to testify regarding whether Mr. Wadsworth's impairments equaled a listing.  The ALJ also erred in not considering Mr. Wadsworth's explanation for failing to seek medical treatment on a more regular basis, which affected the ALJ's credibility determination.

Accordingly, the decision of the Commissioner is vacated and the case remanded for further proceedings consistent with this opinion.

     So ordered.

Date:  July 21, 2008

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov,tracy.jones@usdoj.gov,lin.montigney@usdoj.gov

Patrick Harold Mulvany
mulvany@onet.net